Miller, J.
This action was brought by the plaintiffs to recover a balance of $19,492.91 for goods sold and delivered, consigned or caused to be consigned, and for commissions and moneys paid out.
The plaintiffs are residents of Zurich, in Switzerland, and in October, Í875, the firm of Wettstein, Oehninger & Co., of the city of New York, ordered goods to be manufactured for them by the-plaintiffs at' the price of the material at the time of the order and the cost of manufacturing them. Before the goods were manufactured and shipped, goods of that kind had declined in price in the-market of Zurich from 10 to 15 per cent., and in consequence of some doubt-as to the responsibility of the defendants, the plaintiffs refused to deliver the goods so directed to be manufactured, but stated they would give Wettstein,-Oehninger & Co. credit to the extent of 50,000 francs, and *395 would send on consignment all the goods ordered, and, as fast as Wettstein, Oehninger & Co. reduced their indebtedness below 50,000 francs, they were to take from the goods so consigned an amount equal to the difference between what remained due and the 50,000 francs. Goods were sent directly to the defendants prior to January 1, 1876, and it appears that after that time - they were sent under the above arrangement.
Upon the trial evidence was introduced showing that the goods sent after January 1, 1876, were sent through the custom-house at an alleged under-valuation, and in violation of the revenue laws of the United States. No such defense was set up in the answers of the defendants Wettstein and Meyer. It was, however, interposed in the answer of one Feodore Mierson, who had been appointed receiver in an action to dissolve the copartnership of Wettstein, Oehninger & Co. By an order of the superior court, made upon his own application and dated December 19, 1879, said Mierson was made a party defendant to this action, with leave to answer and defend the same, but no provision was made for an amendment of the summons and complaint, nor was the same amended in this respect.
The principal evidence to sustain the allegation of an under-valuation, as made in the answer of Mierson, was duplicate invoices which were made df three shipments of goods of the value in the aggregate of 58,493 francs 70 centimes, which goods Oehninger, then being one of the firm of Wettstein, Oehninger & Co., testified he had ordered to be manufactured at a price agreed upon several months before the shipment thereof. He also testified that plaintiffs refused to deliver the goods, but offered to consign them at their own risk ; that the duty bills were made at the actual price of the day at the time the goods were shipped in Zurich, and that the plaintiffs were to invoice the *396 . goods at the market value. There were only three invoices as to which duplicates were offered in evidence, and there was no duplicate invoice as to the balance of plaintiffs’ claim, to wit, 31,225 francs 38 centimes, and the claims for commissions were on goods ordered by the defendants’ firm, through the plaintiffs, from third parties. It would seem from the evidence that the goods were plaintiffs’ goods unless the defendant reduced their credit below 50,000 francs, which was not done. If the plaintiffs refused to deliver the goods and they consigned them as their own, it is by no means clear that any offense was committed in violation of the revenue laws, and it is difficult to see how the original defendants, Wettstein and Meyer, can avail themselves of such a defense. It was neither pleaded nor set up in either of their answers, and, therefore, they were not in a position upon the trial to insist that the goods shipped to them were fraudulently imported in violation of the laws of the United States, and that for that reason no action would lie by the plaintiffs against them for a recovery of the value of the same.
The cause of action alleged in the complaint was proven as against the defendants Wettstein and Meyer. Even although Mierson, as receiver, established the "allegation that the invoices were fraudulent and that the revenue laws had been violated, we think the plaintiffs were entitled to recover as against Wettstein and Meyer, and the court erred in refusing to direct a verdict in their favor agaist these defendants as requested by the plaintiffs’ counsel. The most that Mierson had a right to claim was the protection of the funds in his hands as receiver, and a judgment in favor of the plaintiffs providing that they should have no remedy against the funds in the hands of the receiver, in accordance with one of the requests made by plaint *397 iffs’ counsel to charge (which was refused), would have fully protected his rights.
Counsel for the defendants insists that they, having proved that the goods sued for and alleged to have been sold at one price, were by the plaintiffs valued and entered at a lower price in the invoices prepared and transmitted by them with the goods, for the purpose of entering the same in the custom-house, and that plaintiffs had thereby knowingly made or attempted to make the entries thereof by means of the false invoices, in consequence of which the.goods were forfeited to the United States, the court was bound to take notice of the under-valuation ; and that the contract proved being fraudulent by law, the court could not give effect to the same, and was justified in directing a verdict in favor of the defendants.
The correctness of this rule is beyond dispute, and when it is made to appear upon plaintiffs’ own proof or upon a defense interposed by the defendants in due form that the contract in question was illegal, and that the goods were bought and sold for the express purpose of being introduced into the country in violation of its revenue laws, and that the vendor is either a sharer in the illegal transaction or assisted in defrauding the customs, it is a defense to the action, and the plaintiffs cannot recover. In the case at bar, no such facts were proved by the plaintiffs upon the trial, and no such defense was set up in the answers of the original defendants. Numerous cases are cited by the respondent’s counsel to support the position contended for ; but we think that none-of them go to the extent of holding that such a defense is available under a state of facts such as is presented upon this appeal. In the cases cited, the illegality of the transaction was either pleaded or appeared on the plaintiffs’ own showing, and the cases which are specially relied upon do not, we think, show that the defense of illegality was *398 not admissible under the pleadings or did not appear* upon the plaintiffs’ own showing.'
‘ The examination which we have given to the question considered leads us to the conclusion that, inasmuch as the defendants, Wettstein and Meyer, did not plead the defense of under-valuátion in either of their answers, they were not at liberty to insist upon the illegality of the transaction. It would seem that the receiver who represents the defendants should not be permitted to occupy any better position in the defense than the defendants themselves. His whole title is derived from the defendants, who do not claim to defend the action upon any such- ground as is set up in the answer of the receiver.' The only ground upon which he can insist on such a defence, which the de-, i'endants refused to make, is that he represents the creditors, and hence it may be required in order" to protect their rights. This is not enough, and he should not be allowed, on behalf of and for the benefit of the defendants, and without their request or approval, and in opposition to their refusal, to insist upon the same. As we have seen, however, the receiver could not have been injured by a compliance with the last request of the appellant’s counsel, which was refused by the court, as the fund in his hand was especially protected thereby.
The court also erred in directing a verdict in favor of the defendants, for the reasons already stated ; but independent of these, there were no duplicate invoices. as to a portion of the account; and for this, as well as for the commissions on goods ordered by the defend-' ants of other parties through the plaintiffs, the plaintiffs wrere clearly entitled to recover.
We also think that the court erred in refusing to submit to the jury the question made as to the credibility of the witness Oehninger. He was an interested party, and had a direct interest in in creasing, the fund *399 in the hands of the receiver, and in preventing its payment to the plaintiffs. His evidence was given for the purpose of showing the alleged violation of law by the plaintiffs, and in explanation of the three invoices which were made of the goods, of which duplicates were made, and it was a fair question for the jury to say whether he might not have been influenced by the circumstances stated.
The revenue laws are malum prohibitum and not malum in se, and have no extra-territorial force. The plaintiffs,. being foreigners, are not presumed to be acquainted with them, and every intendment is in favor of the plaintiffs. There was some evidence upon the trial which tended to show that the invoices, alleged to be fraudulent, may have been made in reference to the fall in price of the goods between the time they were ordered and the time they were shipped, and that has an important bearing upon the question arising as to the intent of the plaintiffs. Inasmuch, however, as a new trial must be granted for the errors already stated, it is not necessary to consider especially the effect to be given to this aspect of the case.
There is another ground which we think is fatal to the judgment in this case, and that is that the order allowing the receiver to be made a defendant and put in an' answer was improperly granted, and hence the defense interposed by him can be of no avail. The question as to its validity is presented for review upon the appeal taken from the order of the general term affirming the order allowing the receiver to defend, and constitutes a part of the record in this case. Such order, we think, affects the final judgment, and is appealable within the provisions of §1316 of the Code of Civil Procedure. Without the order, the receiver could not have put in an answer, and the judgment rendered is based entirely upon the defense interposed by him, and hence the order is reviewable here.
*400 It is manifest that the court erred in granting the order. As a general rule, third persons are not allowed to intervene in an action at law upon a contract when they are not parties to and have no connection with it.
The defendants in this case were fully authorized to interpose the defense set up by the receiver. They were acquainted with the facts relating to the sale of the goods and their shipment to this country, and if the invoices were fraudulent and the revenue' laws violated so that no recovery could be had, they had a perfect right to insist upon such a defense. Having failed to do this, the presumption is that no such defense in reality existed, or that the defendants, under the circumstances and for satisfactory reasons, did not deem it best to interpose the same.
The only ground upon which the receiver asks to intervene is that there was collusion, and his petition states that upon information and belief such collusion existed between one or more of the defendants and the plaintiffs. It does not name any one of the defendants, and it does not give the source of information, nor why the statements are not verified by the persons from whom such information was obtained. The statements made are mere legal conclusions and not facts, and they are positively denied by the plain tiffs. They are insufficient, under the circumstances, to support the order.
The defendant Oehninger having been released, and the complaint having been dismissed as to him, he is not a party and has no interest in the action, and there being no proof whatever that either of the other defendants were in collusion with the plaintiffs for the purpose of enabling them to obtain a judgment against such defendants, it follows that the order cannot be upheld.
We also think that the receiver had no such interest in the action as authorized him to intervene and interpose a defense.
*401 The judgment should be reversed and a new trial granted, with costs to abide the event, and the order appealed from reversed, with costs of appeal in the general term and in this court, and $10 costs of opposing motion.
All concur.